RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES ACS, et al.,

*Plaintiffs-Appellants,*

*v.*

No. 05-1042

THE DETROIT EDISON COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
Nos. 99-60795; 01-60192; 01-60232—
Marianne O. Battani, District Judge.

Argued: March 9, 2006

Decided and Filed: April 14, 2006

Before: KENNEDY, MOORE, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David R. Parker, CHARFOOS & CHRISTENSEN, Detroit, Michigan, for Appellants. Michael A. Alaimo, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellee. **ON BRIEF:** David R. Parker, Ian B. Bourgoine, CHARFOOS & CHRISTENSEN, Detroit, Michigan, for Appellants. Michael A. Alaimo, Peter W. Waldmeir, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Congress enacted the Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201 *et seq*.), "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work," *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948). Consistent with this goal, the Act "requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week," *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 399 (6th Cir. 2004), but "exempts 'bona fide executive, administrative, or professional' employees from [the] overtime pay requirements," *Auer v. Robbins*, 519 U.S. 452, 454 (1997) (quoting 29 U.S.C. § 213(a)(1)). "Under regulations promulgated by the Secretary [of Labor], one requirement for exempt status under § 213(a)(1) is that the employee earn a specified minimum amount on a 'salary basis.'" *Auer*, 519 U.S. at 455.

Plaintiffs, employees of defendant Detroit Edison Company, appeal the district court's determination that Detroit Edison paid them on a salary basis, making them ineligible for time-and-a-half overtime compensation. Because Detroit Edison has established that the plaintiffs "regularly receive[] . . . a predetermined amount constituting all or part of" their compensation, 29 C.F.R. § 541.118(a) (amended and moved to 29 C.F.R. § 541.602, effective Aug. 23, 2004, by Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22260 (Apr. 23, 2004)), and because that amount was "not subject to reduction because of variations in the quality or quantity of work performed," *id.*, the company satisfied the Act's salary-basis exemption. And because "[a]n employee's time-entry error or omission . . . that results in an initial payment by the Company to an employee of less than" the predetermined amount "is not an unlawful 'docking' or deduction," U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (July 9, 2003), 2003 DOLWH LEXIS 3, at *7, pay variations caused by sporadic under-reporting of plaintiffs' hours do not alter their exempt status. We affirm.

## I.

The seventh largest utility in the United States, Detroit Edison operates 24 hours a day seven days a week to provide power to more than two million customers in a 7,600 square mile region. Plaintiffs are an initial trial group of 24 (out of 383) employees of Detroit Edison who sued their employer alleging violations of the Fair Labor Standards Act. Plaintiffs argue that notwithstanding Detroit Edison's characterization of them as salaried employees, they satisfy the legal definition of hourly employees and thus are entitled to time-and-a-half overtime compensation.

## A.

Detroit Edison pays all 8,500 of its employees—whether classified as salaried ("exempt") employees or hourly ("non-exempt") employees—under a single payroll system. Under this system, all Detroit Edison employees, from the CEO on down, must report the hours they work each week. Every two weeks, the payroll system generates a paycheck based on the employee's reported hours.

Salaried employees receive notice of their exempt status and annual salary each year, usually in March. These notifications list the exempt employees' previous and current salaries and explain that employees' annual salaries are "converted to weekly" salaries by "divid[ing]" the "[a]nnual salaries . . . by 52 and round[ing] to the nearest [dollar]." JA 730. Detroit Edison then calculates an employee's "'regular hourly' rate . . . by dividing the employee's weekly salary by 40 hours." JA 705. To receive their full annual salary, employees must report at least 40 hours each week. Detroit Edison's pay policy states that "[a]n exempt employee's pay may not be reduced because of an absence of less than one full day." JA 500.

While Detroit Edison "[e]mployees normally work 40 hours a week," the company's pay policy states that "alternative work schedules may be uniquely designed to meet an organization's needs." JA 501. As a group, plaintiffs work a variety of daily shifts, including "shifts of 8-, 10-, 12-hours, or a combination," Det. Ed. Br. at 18, some of which do not add up to 40 hours a week. For example, an exempt employee who is assigned to 12-hour shifts typically works three shifts, or 36 total hours, the first week of a pay period, and four shifts, or 48 total hours, the second week of the pay period. To ensure that employees receive 1/26th of their annual salary each two-week pay period, Detroit Edison instructs its 12-hour shift employees to report 40 hours for the week in which they work just 36 hours (three 12-hour shifts).

Under this payroll system, employees occasionally inadvertently report fewer than 40 hours by forgetting to add in their four "free" hours to a week in which they worked just 36 hours. And under the system, employees occasionally deliberately report fewer than 40 hours by excusing themselves from work for a full "personal day" or to account for the fact that they began or ended

their employment mid-week—circumstances under which an employer may legally reduce employees' predetermined salaries without threatening their exempt status. *See* 29 C.F.R. § 541.118(a)(2); *id*. § 541.118(c). When employees fail to report at least 40 hours a week into the system, they receive a paycheck for less than 1/26th of their annual salary.

To prevent employees from mistakenly under-reporting their time, Detroit Edison has implemented several safeguards. In addition to instructing exempt employees about the pay policy, the computerized time-entry program generates a "pop-up" screen to warn exempt employees when they have reported fewer than 40 hours for the week. And employees' paychecks also list the hours they reported for that pay period. If upon reviewing their paychecks employees discover that they failed to report all of their hours, they may submit an "Employee Time & Mileage Adjustment Notice" to correct the error.

Detroit Edison uses an hourly payroll system for several business reasons. Many of its salaried employees "receive hourly payments for hours worked over 40 in a workweek," JA 705, and an hourly system offers one way to calculate those extra hours. An hourly system permits the company to "record accrual and use of the various kinds of leave time (such as, vacation, sick and personal)." *Id.* And for rate-making purposes, the State of Michigan requires public utilities like Detroit Edison to provide data regarding the "specific types of labor costs" it has incurred. *Id.*

B.

In 1999, plaintiffs filed a complaint against Detroit Edison in federal district court, seeking time-and-a-half overtime compensation from the company under the Fair Labor Standards Act. In May 2003, after considerable discovery, the district court determined that Detroit Edison guaranteed the plaintiffs a "predetermined amount" within the meaning of the applicable regulation, 29 C.F.R. § 541.118, but concluded that shortfalls in employee pay based on under-reporting of hours constituted an unlawful docking under that regulation, D. Ct. Op. at 18 (May 7, 2003). On July 9, 2003, a few months after this ruling, the United States Department of Labor issued an opinion letter stating that shortfalls in employee pay, based on under-reporting of hours, did not amount to unlawful docking. Opinion Letter, 2003 DOLWH LEXIS 3, at *7. Reasoning that the opinion letter permissibly interpreted the Department's own regulation and dispositively resolved the issue before it, the district court granted a new motion for summary disposition filed by Detroit Edison and reversed the portion of its prior opinion holding that shortfalls in pay amounted to prohibited dockings. D. Ct. Op. at 3 (July 29, 2003). Plaintiffs filed this appeal, which we review de novo. *See Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001).

II.

The Fair Labor Standards Act requires employers to pay time-and-a-half overtime compensation to all employees who work more than 40 hours a week—except executive, administrative and professional employees. 29 U.S.C. § 213(a)(1). Exemptions to the Act, the Supreme Court has held, must be "narrowly construed against the employers seeking to assert" them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). And "[t]he employer bears the burden of proving that the exemption applies to the employee in question." *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997). Exactly what that burden of proof is, the parties submit, remains unclear. *Compare Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004) (stating that the employer "must establish each element of the exemption by a preponderance of the clear and affirmative evidence") *and Ale*, 269 F.3d at 691 n.4 (stating that the "defendant must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption") *with Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 n.1 (6th Cir. 2004) (noting that the cases applying the "clear and affirmative evidence" standard "have done so without explanation of what the phrase means"). The point need not preoccupy us, however, because Detroit Edison

correctly maintains that it can satisfy either a preponderance or a heightened burden of proof in this instance.

To establish an overtime exemption for executive, administrative or professional employees, 29 U.S.C. § 213(a)(1), an employer must satisfy three tests: "a (1) duties test; (2) salary level test; and (3) salary basis test," *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir. 2001). *See* 29 C.F.R. § 541.1 (amended and moved to 29 C.F.R. §§ 541.100, 541.101, effective Aug. 23, 2004, by 69 Fed. Reg. at 22260); *id.* § 541.118; *id.* § 541.2 (amended and moved to 29 C.F.R. §§ 541.200, 541.204, effective Aug. 23, 2004, by 69 Fed. Reg. at 22260); *id.* § 541.3 (amended and moved to 29 C.F.R. §§ 541.300, 541.303, 541.304, effective Aug. 23, 2004, by 69 Fed. Reg. at 22260). Plaintiffs concede that Detroit Edison has satisfied the first two prongs of this test.

That leaves the question whether the company has satisfied the salary-basis test contained in 29 C.F.R. § 541.118. At all times relevant to this suit, that section provided that "[a]n employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id*. § 541.118(a).

In our view, Detroit Edison has satisfied the administrative requirements of the salary-basis test. The company regularly sets an annual salary for its exempt employees, and the employees are guaranteed to receive 1/26th of their salary each biweekly pay period, provided that they input at least 40 hours into the payroll system each week. Even if they do not work 40 hours in a week, Detroit Edison does not reduce their salary; it allows them to *report* hours in excess of the hours they *work* so that they input sufficient hours to generate their full predetermined amount each pay period. That Detroit Edison chooses to pay what it terms "straight-time" overtime compensation—in other words, additional compensation at the exempt employee's "hourly" rate for hours worked beyond 40 in a work week—does not violate the salary-basis test. The regulation prohibits only "*reduction*[*s*]" due to "variations in the quality or quantity of the work performed." *Id.* (emphasis added). And indeed the regulation acknowledges that "additional compensation besides the salary is not inconsistent with the salary basis of payment." *Id*. § 541.118(b).

What matters is that "deductions may not be made for time when work is not available" "if the employee is ready, willing, and able to work." *Id*. § 541.118(a)(1). In this instance, no evidence indicates that any exempt employee ever suffered a reduction in the portion of her salary that she was entitled to receive each pay period because Detroit Edison did not schedule or allow her to work enough hours during that time. And it has long been clear that an employer may satisfy the salary-basis test even though it chooses to pay salaried employees on an hourly basis. *See Douglas*, 113 F.3d at 71 ("[T]he Wage-Hour Administrator of the Labor Department has advised that hourly employees may be salaried if they are guaranteed a predetermined number of paid hours.") (citing U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (Sept. 22, 1965), 1965 DOLWH LEXIS 171; U.S. Dep't of Labor, Wage and Hour Div., II Field Operations Handbook § 22b03 (May 12, 1970)).

In filing this lawsuit, plaintiffs principally challenged Detroit Edison's eligibility for this regulatory exemption on the ground that when exempt employees under-reported their hours, they received less than their predetermined salary and thus allegedly violated the salary-basis test. As the district court correctly concluded, however, the Department of Labor's July 9, 2003 opinion letter undermines this argument.

The factual settings of the opinion letter and of this case share several similarities. As here, the Department considered "one of the nation's largest producers of energy," a regulated utility "that typically operate[s] 365 days per year and 24 hours per day." Opinion Letter, 2003 DOLWH LEXIS

3, at *1. As here, "[s]ome of the Company's exempt employees work rotating 12-hour shifts. Other exempt employees work eight-hour shifts. The exempt employees are paid an annual salary computed on a biweekly basis" and the company "also pays additional compensation, often referred to as 'overtime,' to many of its exempt employees at the straight-time rate for hours worked in excess of 40 per week. Exempt employees typically are provided with sufficient information based on their annual salary in order to calculate their hourly pay rate in the event that they perform overtime or premium-time work." *Id.* at *1–2.

As here, the Company has a "pay policy that states that employees may be required to record and report their time and associated tasks each week. This is so for two principal reasons. First, when a Company is regulated, it is usually important for rate-making purposes to know the amount of time each exempt (and non-exempt) employee devotes to various tasks. Second, when a Company has voluntarily elected to provide overtime or premium pay to exempt personnel, those employees must account for their regular as well as their overtime hours each week." *Id.* at *2. As here, "[t]he payroll system generates biweekly pay checks for all employees. In order to be paid, each employee must enter the employee's time into the system either directly or through a timekeeper. In some cases, employees may be paid initially only for the amount of time entered on employee time-sheets, and according to the pay code they select to describe that time, such as regular-time, overtime, premium time, or vacation leave." *Id.* at *2–3.

And as here, "[e]mployee time-entry errors or omissions may occur. For example, exempt employees may under-report their time. In such circumstances, such errors or omissions may result in an initial payment to employees of less than 1/26th of their annual salary. The Company has a pay adjustment process for correcting employee time-entry errors or omissions. Moreover, the Company's formal, written pay policy expressly prohibits partial day dockings and exempt employees are expected to report at least 80 hours of time each biweekly pay period." *Id.*

Faced with these comparable circumstances, the Department reasoned that "[t]he salary basis requirement of the [Fair Labor Standards Act] allows employees to enter and describe their time on a weekly basis to generate a biweekly paycheck equal to at least 1/26th of their annual salary. Employees paid according to a pay plan under which they are, in fact, guaranteed to receive no less than 1/26th of their annual salary each biweekly pay period, except for deductions otherwise expressly permitted by 29 C.F.R. § 541.118 (e.g., employee personal absences for a full day or more), are paid on a 'salary basis' within the meaning of the regulations. Provided that employees regularly receive each biweekly pay period under the employment agreement no less than 1/26th of their annual salary (except those deductions expressly permitted) . . . the tracking or accounting of actual hours worked by exempt employees does not violate the 'salary basis' requirements." *Id.* at *6–7 (citing *Douglas*, 113 F.3d at 71).

The Department then concluded that "[a]n employee's time-entry error or omission or other clerical or mechanical error or omission that results in an initial payment by the Company to an employee of less than 1/26th of the employee's annual salary in a biweekly pay period is not an unlawful 'docking' or deduction in the typical sense (e.g. such as a prohibited disciplinary deduction), does not call into question the Company's intention to pay on a salary basis, and does not affect exempt status. Any shortage that results from the employee's error or omission may be adjusted by completing an adjustment form (a process that is consistent with the window of correction contained in 29 C.F.R. § 541.118(a)(6)). The fact that an adjustment process exists to correct such errors indicates that any initial underpayments caused by time-entry errors, like clerical and mechanical errors, are inadvertent and may be part of any payroll system that is subject to human error." *Id.* at *7–8.

Plaintiffs do not contest the Secretary's authority to interpret her own regulation—29 C.F.R. § 541.118—in this way. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("[I]n

choosing between various constructions" of an administrative regulation, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."); *Auer*, 519 U.S. at 461 ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation.") (internal quotation marks omitted); *Air Brake Sys. v. Mineta*, 357 F.3d 632, 643 (6th Cir. 2004) ("*Seminole Rock* deference [is] the 'controlling weight' that federal courts generally give an agency's interpretation of its own ambiguous regulation."). And in view of the content of the opinion letter, plaintiffs understandably have narrowed their objections to Detroit Edison's claimed entitlement to the overtime exemption.

They first argue that the opinion letter does not govern this appeal because it assumes away one of the issues in this case, namely whether "a salary guarantee is in effect and operational" at Detroit Edison. Opinion Letter, 2003 DOLWH LEXIS 3, at *4. The opinion letter, true enough, proceeds from that assumption. But plaintiffs have failed to explain why the considerable evidence submitted by Detroit Edison in support of its claimed salary-guarantee policy—affidavits and deposition testimony by relevant employees of the company along with various employee time-keeping forms, pay stubs, and payroll department reports—does not establish that very point. *See* JA 500, 705, 730, 1015–59, 1198, 1680–84, 1742, 1780, 1897–99, 1988–89, 1994–2001, 2006, 2256–2300. They offer no legal support for the proposition that the uncontested evidence contained in these depositions, affidavits and documents does not suffice to satisfy an employer's burden to show its eligibility for the executive, administrative or professional exemption. In the end, the undisputed evidence amply supports the district court's conclusion that the plaintiffs receive a predetermined amount each pay period within the meaning of 29 C.F.R. § 541.118(a).

Plaintiffs persist that even if they receive a predetermined amount each pay period, they nonetheless have received less than this predetermined amount on certain occasions under Detroit Edison's payroll system. But as the Department of Labor's opinion letter points out, "[e]mployee time-entry errors or omissions may occur" under such an hourly payroll system, Opinion Letter, 2003 DOLWH LEXIS 3, at *3, and the occurrence of those errors by itself does "not affect [the] exempt status" of salaried employees, *id.* at *7. Plaintiffs have not shown that the payroll shortfalls documented in this case stem from anything other than mistakes or, as the opinion letter puts it, "employee time-entry errors." Nor have they shown that the Fair Labor Standards Act generally circumscribes an employer's authority to choose the mechanics of a compensation system that suits its business needs. *See also, e.g.*, *id.* ("[T]he tracking or accounting of actual hours worked by exempt employees does not violate the 'salary basis' requirements.") (citing *Douglas*, 113 F.3d at 71).

Neither is this a case in which the sheer number of payroll shortfalls by itself suggests that the salaries of these employees were not predetermined. Plaintiffs claim that they have identified 40 occasions in a six-and-a-half year time span when some exempt employees did not receive the full 1/26th of their salary in a pay period (reductions that affected 29 of the 383 employees in this lawsuit). *See* Employees Br. at 5–7. A healthy percentage of these shortfalls, Detroit Edison points out, "involved the types of situations where an employer may lawfully reduce" the employee's salary and the "remaining incidents" were the result of employee time-keeping errors. Det. Ed. Br. at 24; JA 2052–71. The relatively low number of shortfalls caused by human error over this six-and-a-half year period indicates that this simply is not a case where the intricacies or irrationalities of a company's payroll system might themselves undermine an employer's effort to show that it pays exempt employees a predetermined salary.

III.

For these reasons, we affirm.