**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0541n.06**
**Filed: August 1, 2006**

**No. 05-4124**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DEMPSEY C. WOOD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THE MID-AMERICA MANAGEMENT | ) | NORTHERN DISTRICT OF OHIO |
| CORP., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; JORDAN, District Judge.[*]

SUTTON, Circuit Judge.  Dempsey Wood sued his former employer, Mid-America Management Corp., for failing to pay him overtime wages under federal and state law.  The district court rejected his claims as a matter of law.  Because Wood admits that Mid-America compensated him for all of the overtime that he did report and because he cannot prove that Mid-America had actual or constructive knowledge that he failed to report other overtime hours, he is not entitled to be compensated for these additional, unreported overtime hours.  And because he did not sufficiently allege in his complaint that Mid-America failed to pay him at the correct rate for the overtime hours he did report, the district court properly dismissed that claim as well.  We affirm.

---

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

No. 05-4124
*Wood v. Mid-America Mgmt. Corp.*

I.

Mid-America manages commercial and residential properties, including the Imperial House Apartments, a 118-unit complex in Lakewood, Ohio. In 1999, the company hired Wood to work as an on-site maintenance technician at the Imperial House. When Wood interviewed for the position, the managers said it "would require a lot" of overtime and told Wood that he "would be compensated for it." JA 63. Wood worked for Mid-America through May 2003.

Mid-America paid Wood $8.25 per hour when he started the job and almost $10 per hour by the time he left it. He worked from 8:00 a.m. to 4:00 p.m. during the week. His duties included (1) performing daily maintenance on the building's boilers and heating, ventilating and air conditioning system, (2) removing garbage and (3) responding to mechanical or plumbing problems. In the appropriate seasons, he attended to the pool and removed snow from the grounds. And when tenants left the apartment complex, he restored the rental units to their original condition for the next residents.

Every other week, Wood was "on call" to respond to after-hour emergencies. Regardless of whether he responded to a call during these weeks, Mid-America automatically paid Wood for two hours of overtime per week when he was on call. If during these weeks he also worked overtime, he would report these hours on his time card and Mid-America would compensate him for that overtime as well.

Wood was responsible for completing and signing his own time cards, which he submitted to the property manager for processing. On them he documented his regular hours, indicated that he was entitled to receive two hours of overtime pay automatically (during the weeks in which he was on call) and recorded any overtime work that he performed during the pay period. By signing his time card, Wood acknowledged that he "was attesting to [its] accuracy." JA 101. When Wood worked after normal business hours, no supervisors were at the Imperial House to monitor him. He admitted that he "expect[ed] the people who processed the time cards and took care of payroll matters . . . to rely on" his time cards to pay him. JA 103. The parties agree that Mid-America always compensated Wood for overtime he reported in this fashion at a rate of one-and-a-half times his hourly rate.

In August 2004, Wood sued his former employer in federal district court, alleging that it had violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and Ohio's Minimum Fair Wage Standards law, O.R.C. §§ 4111.01 *et seq.* (incorporating the minimum-wage and overtime-compensation provisions of the FLSA). After discovery, Mid-America moved for summary judgment on all claims. The district court granted Mid-America's motion.

II.

Congress enacted the Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201 *et seq.*), "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work," *Bay Ridge Operating*

No. 05-4124
*Wood v. Mid-America Mgmt. Corp.*

*Co. v. Aaron*, 334 U.S. 446, 460 (1948). "Consistent with this goal, the Act requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764–65 (6th Cir. 2006) (internal quotation marks omitted). An FLSA plaintiff "must prove by a preponderance of evidence that he or she 'performed work for which he or she was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)) (brackets omitted).

A.

While Mid-America paid Wood for all of the overtime hours he reported on his time cards, he claims that he did not report all of the overtime he worked and accordingly that Mid-America must pay him for this additional time as well. Pointing to a regulation promulgated under the FLSA, Wood claims that Mid-America owes him for these unreported hours because it knew that he was working them. *See* 29 C.F.R. § 785.11. That regulation says that "[w]ork not requested but suffered or permitted is work time" and that if "[t]he employer knows or has reason to believe that" an employee "is continuing to work," then "the time is working time." *Id.*

In attempting to bring himself within the requirements of this regulation, Wood offers the following testimony. He acknowledges that "I did" write down "[s]ome" hours, "[a]nd some I didn't." JA 98. He would not write down his overtime hours "all of the time," JA 95, he explains, because "[t]here [are] so many little things in between there that are so numerous, I couldn't . . . .

I was with this person two minutes, that person five minutes. I went and talked to this person for an hour. Just too many numerous things in between there," JA 97. Although Wood did not keep any records of the overtime he failed to report, he says he "figured out myself personally" that he worked but did not report an "average of five hours plus a day, per day." JA 59–60; *see also* JA 91 ("I could not put [my] finger on the amount of time because I did it continuously."); JA 92 ("[T]here is no way . . . that I can estimate the time I spent with people on a daily basis in the building that I can claim one minute for.").

This is a bridge too far. "[A]n employee," it is true, "must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time," but this requirement applies only if "the employer 'knows or has reason to believe that the employee is continuing to work' and that work was 'suffered or permitted' by the employer." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (quoting 29 C.F.R. § 785.11) (brackets omitted). Quite sensibly, "an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998).

In this instance, Wood says that he regularly performed, but did not report, duties after normal hours such as patrolling the grounds, checking the pool water quality and machines, cleaning the pool and surrounding area, attending to vacated rental units to prepare them for the new tenants and working in the boiler room. Yet in his deposition, Wood conceded that "there is nothing inherent about any of those tasks that required them to be done after hours," and that "they could

have been done during the normal workday." JA 624. What is more, Wood acknowledged that he performed these same duties "during the normal work day." *Id.*

Because Wood did report some overtime and because he reported any time he was called to work through the answering service (which generated a record of the call), Mid-America had no reason to suspect that he neglected to report other overtime hours. Wood does claim that he once told his supervisor that he was not reporting all of his overtime hours, but he also admits that in response she told him "that [he] needed to report all of [his] overtime hours; that [he] couldn't get paid for them if they weren't written down, or reported." JA 72–73; *see also* JA 75–76 (When Wood told his boss that he "worked more hours that [he] didn't write down," she instructed him to "tell us about them, report them."); JA 78 ("Q: But [your boss], or anybody else from Mid-America, never told you don't turn in those hours, you're not going to get paid for them? A: No, she told me to get in for what I worked."); *see also* JA 75 (noting that his boss never "disapprove[d] any hours" that he reported).

At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

B.

Wood also argues that even when Mid-America paid him overtime, it did not pay him at the proper rate. The FLSA provides the familiar time-and-a-half requirement for overtime pay: "compensation for . . . employment in excess of" forty hours a week must be "at a rate not less than one and one-half times the regular rate at which [an individual] is employed." 29 U.S.C. § 207(a)(1). While Mid-America plainly paid Wood for overtime at a rate of one and a half times his hourly wage, Wood submits that the company failed to include the value of the on-site apartment in which he was required to live in determining his underlying rate of pay. The district court rejected this claim as a matter of law because Wood failed to raise it in his complaint.

In the factual allegations section of his complaint, Wood stated that Mid-America provided him "with an apartment, which is valued at approximately $900 per month, as part of his regular rate of pay," JA 14, and that he "was not compensated for the overtime hours he worked each workweek at a rate of one and one-half times his regular rate of pay," JA 15. The complaint contains just four claims, and only the third claim alleges that Mid-America did not pay him "overtime compensation at the appropriate rate of pay." JA 17. Claim three, however, deals only with an allegation of a "willful violation of FLSA," *id*. (capitalization removed), and Wood offered no evidence that Mid-America willfully violated *any* provisions of the FLSA.

Any doubt about the district court's resolution of this claim is removed by Wood's deposition testimony, where the following exchange occurred:

> Q:     . . . Could you tell me, I guess, in your own words, what your lawsuit against Mid-America is about?
>
> A:     Yes.  I wasn't paid, or compensated for the time that I worked.
>
> Q:     So you believe you are entitled to compensation, overtime compensation?
>
> A:     Yes.
>
> Q:     So essentially you are claiming that you worked more than 40 hours per w[ee]k during the time you worked there?
>
> A:     Absolutely.
>
> Q:     And for those overtime hours you weren't compensated?
>
> A:     Yes.
>
> Q:     Is that the only basis of your claim?
>
> A:     Yes.

JA 57–58.  Having failed to raise this contention in his complaint and having disclaimed bringing any claim other than an hours-worked claim in his deposition, Wood cannot tenably argue that the district court erred in dismissing it.

III.

For these reasons, we affirm.