**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0209n.06

No. 10-5767

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Feb 23, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ANTHONY OLDHAM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES POSTAL SERVICE, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Anthony Oldham, a former employee of the United States Postal Service ("USPS"), filed suit under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid overtime compensation. After a bench trial, the district court ruled in favor of the USPS, finding that Oldham did not work the overtime hours for which he sought recovery. In addition, the district court found that because Oldham self-reported his time and was paid for any claimed overtime, his failure to report additional overtime hours allegedly worked barred recovery. Oldham appeals. For the following reasons, we affirm the judgment of the district court.

I.

This case arises from overtime work which Oldham allegedly performed in 2003, 2004, and 2005 without compensation. Oldham was employed by the USPS as a non-exempt employee from

1

May 1994 through May 2005. In November of 1999, Oldham became a full-time window clerk—classified as an Executive and Administrative Schedule ("EAS") 5 position—at the Madison, Tennessee, Post Office. Oldham subsequently began taking on temporary supervisory positions, known as 204Bs, at various post offices around Tennessee. In January of 2003, Oldham went to Lebanon, Tennessee, on a 204B assignment at a new annex post office that the USPS was opening due to the high volume of mail received by the main post office in Lebanon.[1] Oldham claimed that he put in greater than twelve hour days from January 2003 through the summer of 2003, generally working from 4:00 a.m. until 6:00 or 6:30 p.m. After the summer of 2003, Oldham testified that he began coming in a little later, starting his workday at approximately 5:00 or 5:30 a.m., and leaving work at 5:30 or 6:00 p.m.

In March 2004, Oldham became an official Lebanon employee through an involuntary reassignment. Thus, his home office was no longer Madison, and at this point another USPS employee, Pam Higdon, generally entered his time, although occasionally other USPS employees would enter his time. Although Oldham should have been clocking in and out of work, he was told not to do so by Tracy Mofield, the Lebanon postmaster, and Kelly Jordan, the station manager.

Oldham testified that he generally worked six days a week, twelve hours a day from October 2003 through July 2004, and after his reassignment to Lebanon became official, he continued to work from approximately 5:00 or 5:30 a.m. to 5:30 or 6:00 p.m. Several coworkers placed Oldham's arrival time at the annex at 7:00 a.m. or later, with others reporting a 6:30 a.m. arrival, and others

---

[1]The district court's decision was premised on its finding that Oldham was a non-exempt employee—even when performing supervisory tasks as a 204B—making FLSA applicable, and the parties do not contest this finding on appeal.

suggesting that a 6:00 a.m. arrival was Oldham's "normal time." In addition, Oldham's Lebanon supervisor, Kelly Jordan testified that he told his supervisory-level employees to show up approximately thirty minutes before the city postal carriers would clock in, which would suggest a 6:30 a.m. or 7:00 a.m. arrival time, and that he told Oldham that it was an eight hour job. Employees at the Lebanon Annex also recalled that Oldham took long lunch breaks and often left earlier than his own testimony would suggest. For instance, Jordan testified that he and Oldham often took two-hour long lunch breaks. Further, Byrum O'Guin testified that Oldham was occasionally absent from the annex at 3:30 p.m. when O'Guin would return from his route, and Jared Kennamer recalled that he overlapped with Oldham while taking over his position in Lebanon and that the two men both worked from 6:30 a.m. to 3:30 p.m. during that period. In addition, other employees testified that when Oldham stayed later than his official duties at the annex required, it was often in order to work on personal matters such as his resume or the newsletter for his Masonic lodge, or to make-up time because he had taken an extra-long lunch.

In July 2004, Oldham received a 204B assignment to work in the Antioch Post Office. During his time in Antioch, Oldham reported his time using a time card. Oldham has made no claims for overtime worked during his 204B assignment in Antioch, which ended in January 2005, because he acknowledges that he was compensated for any overtime worked during that time period.

On December 25, 2004, Oldham was promoted to postmaster for the Arrington, Tennessee post office, and he officially began reporting to the Arrington office on approximately January 24, 2005. Oldham alleges that a manager of post office operations ("MPOO"), Ramona Mitchell, asked him to stay on in order to assist his Antioch supervisor by getting the new replacements up to speed,

completing an additional task of tracking the street observations of postal carriers that were being conducted in her twenty-two offices, and carrying out additional street observations in Antioch. Mitchell's testimony differs from Oldham's. Mitchell testified that the special project of tracking the street observations should have been a fifteen to thirty minute task involving making a simple Excel spreadsheet and that she "never knew of Mr. Oldham going out to any office on my behalf." Oldham testified that because he had not completed the street observations in Antioch by January 24, he worked in both Antioch and Arrington for the first few weeks following his start as Arrington's postmaster. Due to this workload, Oldham claims that he was working from 4:00 a.m. until 6:00 or 7:00 p.m.

As a postmaster, Oldham was able to self-report his time and submitted his hours to the time and attendance office directly. However, Oldham testified that when he spoke with the time and attendance office, he was told that they would only accept his report of the hours worked in Arrington and that the office for which he was performing additional work (Antioch) would be responsible for submitting his additional hours. Oldham alleges that he informed a supervisor in Antioch about the hours he was logging on the street observations, but these additional hours were not included in his pay. When he noticed the discrepancy and informed the time and attendance office, he was told that it was the responsibility of the individual offices to submit adjustments to correct the error. Oldham admits that when the adjustments were not made, he did not follow-up to correct his time because he was "so busy at that time" that he was "hoping [time and attendance] would take care of it."

At a dinner gathering held on March 31, 2005, Oldham alleges that Mona Mitchell approached him and requested that he perform additional work certifying the Franklin Post Office. After the gathering, Oldham claims to have worked in three post offices until May 2005: Franklin, Antioch, and Arrington. While spreading his time across all three offices, Oldham alleges that he began his workday at 4:00 a.m. in the Franklin office, would leave for Arrington at 11:00 a.m., oversee new employee training there, and then head out to Antioch to conduct street observations in the afternoon. Although Oldham affirmatively responded to questions premised on the fact that he worked in three post offices from approximately February to May 2005, Oldham's specific testimony was that he finished the Antioch work on April 1, 2005 and that he commenced working in Franklin after the dinner gathering, which was stipulated to have occurred on March 31, 2005. Thus, the testimony suggests that he worked at most one day in all three locations.

On April 22, 2005, USPS inspectors interviewed Oldham regarding allegations of improperly issuing money orders. Oldham was then placed on paid administrative leave and resigned from the USPS in July 2005. Oldham's FLSA claim seeks compensation for overtime work allegedly carried out during two periods: first, from October 4, 2003 through early July 2004, when he was a 204B hourly employee working in Lebanon; and second, between January 24, 2005 and April 22, 2005,[2] when he was an hourly employee and postmaster of Arrington.

Oldham filed a complaint on October 4, 2006, in the United States District Court for the Middle District of Tennessee, alleging that the USPS willfully, knowingly, or recklessly violated the

---

[2]Although Oldham actually claimed that he worked through May 2005 in his complaint, at trial he clarified and admitted that he was removed from his position and placed on administrative leave on April 22, 2005.

FLSA by failing to pay his wages due for hours worked in excess of forty hours per week. Following a three-day bench trial, the district court ruled in favor of the USPS. The district court concluded by a "preponderance of the evidence . . . that [Oldham] did not work the overtime hours for which he seeks recovery," and found that "[Oldham] entered his own time for the unauthorized overtime and the evidence establishes that [Oldham] was actually performing personal activities or did not perform postal work or was not authorized to incur this overtime work."

Oldham then filed a motion to alter or amend the district court's findings of fact and conclusions of law, pursuant to Federal Rules of Civil Procedure 52(b) and 59. Oldham first argued that the district court should alter or amend its prior factual findings and legal conclusions because the timekeeping and payroll records of the USPS inaccurately represented the number of hours Oldham worked and how much he should have been compensated for that time. Second, Oldham asserted that the district court erroneously relied upon *Wood v. Mid-America Management Corp.*, 192 F. App'x 378 (6th Cir. 2006), to support its conclusion.

The district court denied Oldham's motion. The district court rejected Oldham's first contention that the USPS records "'do not accurately reflect the amount of hours' that [Oldham] worked or how much [Oldham] should have been paid" because it found that in "2003 and 2004 after the end of his scheduled eight hour shift at the Lebanon Annex, [Oldham] was not doing compensable work for the [USPS]," and beyond Oldham's own testimony regarding his twelve hour days at the annex there was no "corroborative witness who testified [Oldham] was at the Lebanon annex any earlier than 6:00 a.m." R. 93, at 1. The district court also noted that after Oldham began working as the postmaster in Arrington, there was no corroborative proof for his alleged work for

the Antioch post office and that Oldham's testimony regarding the street observations carried out for Mitchell was contradicted by Mitchell's testimony. The district court reaffirmed its decision not to accept as credible Oldham's "self-reported hours that were not recorded in the [USPS]'s records" because Oldham had either self-reported his time to the USPS via a timekeeper or by personally entering his own time, was paid for his reported overtime hours, and was appropriately not paid for the time he failed to report. The district court explained that "[a]n employee must advise the employer of overtime work and failure to do so precludes an FLSA [action]." *Id.* at 2 (citing *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005)). The district court also rejected Oldham's challenge to its reliance on *Wood*, finding that the case, which held that "an employer cannot suffer or permit an employee to perform services about which the employer knows nothing," was applicable. R. 93, at 2–3 (quoting *Wood*, 192 F. App'x at 380).

II.

On appeal from a bench trial, we review the district court's factual findings for clear error and its conclusions of law *de novo. Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 478–79 (6th Cir. 2005); *see* Fed. R. Civ. P. 52(a)(6). A finding of fact is clearly erroneous when "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 517 (6th Cir. 2009) (quoting *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008)). "The burden is on the appellant to prove such a mistake, and this burden is not met merely by demonstrating a conflict in the testimony, nor by seeking to redetermine the credibility of witnesses. Moreover, the appellate court must review the facts in the light most favorable to the appellee."

*Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717, 722 (6th Cir. 2003) (internal citations omitted).

A district court's determination of witness credibility is entitled to great deference on appeal. *See*

*Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985); *Isabel v. City of Memphis*, 404 F.3d

404, 411 (6th Cir. 2005).

### III.

### A.

Congress enacted the FLSA in order to "compensate those who labor[] in excess of the

statutory maximum number of hours for the wear and tear of extra work . . . ." *Bay Ridge Operating*

*Co. v. Aaron*, 334 U.S. 446, 460 (1948). The FLSA requires employers to pay their non-exempt

employees "time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit*

*Edison Co.*, 444 F.3d 763, 764–65 (6th Cir. 2006) (internal quotation omitted); *see also* 29 U.S.C.

§ 207(a). A FLSA plaintiff has the burden of proving "by a preponderance of the evidence that he

or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper*

*Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 686–87 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, 29

U.S.C. §§ 251–62).

### B.

Oldham argues that the district court erred by discounting certain testimony from non-party

witnesses and evidence from certain exhibits. Specifically, Oldham argues that: (1) trial testimony

clearly established that he commenced work at the Lebanon Annex before his scheduled "begin

time" and worked beyond his scheduled "end time," thus establishing that the payroll and

timekeeping records from October 2003 through June 28, 2004 are inaccurate because Oldham was performing compensable work outside of the eight hour workday schedule; and (2) USPS timekeeping and payroll records between January 26, 2005 and April 25, 2005, when he was postmaster in Arrington, are inaccurate because he performed work that he was not compensated for during that time. We address the arguments relating to the recovery of allegedly unpaid overtime during Oldham's time as a 204B at the Lebanon Annex first.

## 1. Lebanon Annex Claims

Oldham notes that his USPS Employee Everything Reports, which track his time worked, record his workday as a 204B in Lebanon between October 2003 and June 2004 as spanning eight hours with a one hour lunch break, commencing at either 6:00, 6:30, or 7:00 a.m. and ending at 3:00, 3:30, or 4:00 p.m., respectively. Oldham argues that because trial testimony indicates that he worked either before or after the recorded times, the district court erred in finding that he was not entitled to compensable overtime. However, Oldham's argument is based on the false premise that any time one is at work outside of one's scheduled or reported work hours, one is entitled to overtime, even if one does not actually work more than a standard eight hour shift.[3] In addition, Oldham's argument requires that a further inference be drawn from the evidence—that if he remained in the Lebanon Annex beyond his scheduled end time, he was necessarily engaged in overtime work. As neither of these inferences need necessarily be made and testimony supported the conclusion that Oldham was

---

[3]For example, if one was scheduled to work from 9:00 a.m. to 5:00 p.m., but instead worked from 9:30 a.m. to 5:30 p.m., that would not entitle one to overtime pay as the hours worked do not exceed the standard eight hour shift. The record demonstrates that this is not unheard of at the USPS.

not engaged in unpaid overtime work while working in the Lebanon Annex between October 4, 2003, and June 28, 2004, the district court's factual findings on this point were not clearly erroneous.

As an initial matter, substantial testimony at trial contradicted Oldham's assertion that he worked approximately twelve hours a day, six days a week in the Lebanon Annex. Although Oldham referred to starting work as early as 4:00 a.m. while getting the Annex up and running, he actually claims to have typically worked from 5:00 or 5:30 a.m. until 5:30 or 6:00 p.m. during the period for which he is claiming unpaid overtime in Lebanon. There was no corroborative testimony from any other Lebanon Annex employee that suggests that Oldham would regularly arrive to start his workday at the Annex prior to 6:00 a.m. Given the other testimony at trial, the district court did not clearly err in crediting the testimony of multiple non-party witnesses and the records of the USPS instead of Oldham's own uncorroborated testimony about his arrival time at the Annex.

Oldham asserts that testimony at trial demonstrated he worked beyond his set end time, and his supervisors were aware of his work after his scheduled shift. Those facts, he submits, require a finding that he was "'suffered or permitted' to work beyond his schedule[d] end time" and therefore entitled to be paid for additional hours worked. Oldham cites the testimony of Kelly Jordan, who was Oldham's supervisor in Lebanon, in support of his argument that USPS supervisors were aware of his overtime work at the end of the day. Oldham notes that Jordan testified that he knew that Oldham often stayed beyond his normal 3:30 p.m. or 4:00 p.m. end time. However, Oldham fails to acknowledge the fact that Jordan also testified that he and Oldham generally took two-hour long lunches and activity breaks in the middle of the day, that Oldham sometimes stayed late to make up for the lengthy lunch hours, that Oldham told him that he chose to stay late in the

Annex because his home life was unhappy, and that Oldham also stayed late to work on his resume. In addition, although Oldham is correct that other trial testimony indicates that coworkers can place him at the Annex after 3:30 or 4:00 p.m., that fact alone does not automatically entitle him to compensation for additional hours worked. No witness actually saw Oldham working on postal matters when he stayed late. For example, Charles Robertson's deposition testimony indicated that although Robertson saw Oldham staying late, he did not see what work Oldham was doing. However, Robertson did report observing Oldham working on his Masons' lodge newsletter in the afternoon just before the two men left to go home. Finally, USPS employees who reported Oldham's time during his 204B assignment in Lebanon testified that they entered Oldham's time as he reported it to them. For example, Pam Higdon, who was a supervisor at the main Lebanon post office, recalled that she input Oldham's time when he called in to report working more than an eight hour day.

Thus, because significant trial testimony indicated that Oldham reported to work later than he claimed, that he was not required to stay later and often engaged in personal activities when he did so, and that he either reported his hours to others or entered his own time, including any claimed overtime, it was not clear error for the district court to find that Oldham did not establish by a preponderance of the evidence that he was owed additional pay for the time worked in Lebanon.

### 2. Arrington Claims

Oldham also challenges the factual findings the district court made regarding his overtime claims for the period of time that he was the Arrington postmaster, reflected in payroll records from January 26, 2005 through April 25, 2005. Oldham contends that trial testimony and Plaintiff's trial

exhibit 21, which contained a record of the number of hours transferred between Arrington and other post offices covering approximately the first four months of 2005, demonstrate that he worked overtime hours beyond the overtime hours recorded in the USPS payroll records.

At trial, Oldham testified that he worked at the Antioch, Arrington, and Franklin post offices from approximately February through May 2005. Oldham testified that he started his day in Franklin at 4:00 a.m., worked there until 11:00 a.m., then headed to the Arrington Post Office and worked there training Lucas Brewington, and then headed to either Franklin or Antioch to conduct street observations. Oldham is correct that Roy Ray testified that he believed that Oldham worked from 4:00 a.m. to 12:30 p.m. at the Franklin Post Office. However, Ray also noted that he could not recall how long Oldham worked at the Franklin Post Office and did not know whether Oldham worked any overtime in Franklin. Oldham also correctly notes that Brewington testified that he and Oldham once worked until 2:00 a.m. However, Brewington also testified that he and Oldham started work at 5:00 a.m. Monday through Friday during the three week training period, which is not consistent with a 4:00 a.m. start time for Oldham during that period. Contrary to Oldham's claims, Brewington testified that Oldham did not work at other post offices during the training period and that after Oldham started working at other post offices, his Arrington hours dropped off to the point where Brewington saw him "very rarely."

Other trial testimony and facts elicited at trial conflicted with Oldham's alleged work at three post offices between late January and May 2005. To begin with, Oldham's own testimony is internally inconsistent. Although Oldham testified that he worked at three post offices during the months in question, he also testified that he only started going to Franklin at 4:00 a.m. after the

dinner meeting, which was held on March 31, 2005. Ramona Mitchell's testimony confirmed that Oldham was not sent to work in Franklin until after the March 31, 2005 meeting at the restaurant. Oldham also testified that he finished up the work in Antioch "sometime around the first of April." Thus, at most, Oldham would have worked in Franklin and the other two post offices for one day. Further, trial testimony failed to confirm Oldham's claim that, after starting as the Arrington postmaster, he simultaneously worked in Antioch completing a project for Mitchell. Mitchell testified that although she could not remember the exact project she asked Oldham to complete, she believed it was most likely a fifteen to thirty minute task, and she was unaware that Oldham went to any office on her behalf. Carol Wood's testimony also raised doubt regarding whether Oldham worked in Antioch after January 2005. Wood, the Antioch postmaster, testified that Oldham did not come back to the Antioch Post Office to work after he left to take his position in Arrington, that she did not recall his working on the 2005 rural mail count, and that she did not "remember seeing [Oldham] in Antioch after he went to Arrington . . . ." Wood also testified that Oldham would have completed street observations in Antioch by January 1, 2005. Finally, evidence presented at trial confirmed that Oldham submitted his hours worked, including claims for overtime hours incurred, between February and May 2005, and was paid for those hours.

Given the content of the trial testimony, it was not clear error for the district court to conclude that Oldham failed to establish that he was not compensated for allegedly incurred overtime between February and May 2005. The district court noted the contradictory testimony regarding Oldham's work in Antioch after assuming his post as the Arrington postmaster and the fact that Oldham self-reported his time and included overtime hours, for which he was compensated. In addition, given

the testimony and evidence presented at trial, the district court did not accept as credible Oldham's self-reported hours that were not reflected in USPS records. "'When factual findings rest upon credibility determinations, this Court affords great deference to the findings of the district court.'" *Smoot v. United Transp. Union*, 246 F.3d 633, 641 (6th Cir. 2001) (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999)). Here the trial judge's factual findings were, in part, based on his decision to credit the testimony of non-party witnesses who told "'coherent and facially plausible stor[ies] that [were] not contradicted by extrinsic evidence . . . .'" *Hogan v. United States*, 407 F.3d 778, 782–83 (6th Cir. 2005) (quoting *Anderson*, 470 U.S. at 575). Such findings, "if not internally inconsistent, can virtually never be clear error." *Id.* (internal quotation marks omitted). Given the conflicting testimony, the deference owed to district court credibility determinations, and the applicable clearly erroneous standard of review, we will not disturb the district court's factual findings.

C.

Oldham also argues that the district court erroneously relied on *Wood v. Mid-America Management Corp.*, 192 F. App'x 378 (6th Cir. 2006), and *Harvill v. Westward Communications, LLC*, 433 F.3d 428 (5th Cir. 2005), to find in favor of the USPS. Oldham argues that his case is distinguishable from the precedent cited by the district court and thus the district court incorrectly reached the legal conclusion that his failure to report additional overtime hours bars his recovery of unpaid overtime under the FLSA. Essentially, Oldham reargues his challenges to the factual findings of the district court, discussed above, in this context.

In *Wood*, we held that an employer must pay an employee for overtime, even if the employer did not specifically ask the employee to perform that work—but "only if the employer knows or has reason to believe that an employee is continuing to work and that work was suffered or permitted by the employer." 192 F. App'x at 379 (internal quotation marks omitted). Here, as in *Wood*, Oldham reported his own time, reported some overtime, and the USPS lacked any reason to suspect that Oldham's overtime reports were inaccurate. *See id.* Although Oldham argues that the district court erred in finding that his USPS supervisors did not know or have reason to know that he was performing compensable work beyond his scheduled hours, that argument essentially challenges the district court's factual findings and fails to provide reasoned argumentation indicating why *Wood* is inapplicable precedent.

Oldham likewise fails to successfully distinguish *Harvill* or to establish why it was error for the district court to cite it as persuasive precedent, because his argument is premised on his challenge to the district court's factual findings—which we have already found were not clearly erroneous.

IV.

For the foregoing reasons, we affirm the judgment of the district court.