*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MARGARET WHITE, on behalf of herself and
all others similarly situated,
              *Plaintiff-Appellant*,

v.

BAPTIST MEMORIAL HEALTH CARE
CORPORATION; BAPTIST MEMORIAL
HOSPITAL-DESOTO, INC.,
              *Defendants-Appellees*.

No. 11-5717

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:08-CV-2478—Samuel H. Mays, Jr., District Judge.

Argued: July 19, 2012

Decided and Filed:  November 6, 2012

Before:  SILER and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.<sup>*</sup>

_____

## COUNSEL

**ARGUED:** Alan G. Crone, CRONE & McEVOY, PLC, Memphis, Tennessee, for
Appellant.  Paul E. Prather, KIESEWETTER WISE KAPLAN PRATHER, PLC,
Memphis, Tennessee, for Appellees.  **ON BRIEF:** Alan G. Crone, CRONE &
McEVOY, PLC, Memphis, Tennessee, J. Nelson Thomas, THOMAS & SOLOMON,
LLP, Rochester, New York, for Appellant.  Paul E. Prather, Lisa L. Leach, Craig A.
Cowart, R. Alex Boals, KIESEWETTER WISE KAPLAN PRATHER, PLC, Memphis,
Tennessee, for Appellees.

        SILER, J., delivered the opinion of the court, in which VAN TATENHOVE,
D. J., joined.  MOORE, J. (pp. 13-22), delivered a separate dissenting opinion.

_____

<sup>*</sup>The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

1

---

**OPINION**

---

SILER, Circuit Judge.  Plaintiff Margaret White appeals the district court rulings that granted summary judgment for Defendant Baptist Memorial Health Care Corp. (Baptist) and decertified her class action against Baptist.  She argues the district court incorrectly held that Baptist's policy for compensating hourly employees for missed meal breaks was lawful under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq*.  White states this ruling caused the district court to wrongfully grant Baptist's motions for summary judgment and class action decertification.  For the following reasons, we affirm.

I.

A.

White was a nurse for Baptist from August 2005 to August 2007 and treated patients that came to the emergency department.  She did not have a regularly scheduled meal break due to the nature of her job at the hospital.  Meal breaks occurred during her shift as work demands allowed.

During her new employee orientation, White received a copy of Baptist's employee handbook.  The handbook stated employees working shifts of six or more hours receive an unpaid meal break that is automatically deducted from their pay checks.  The handbook also provided that if an employee's meal break was missed or interrupted because of a work related reason, the employee would be compensated for the time she worked during the meal break.  Baptist employees were instructed to record all time spent performing work during meal breaks in an "exception log" whether the meal break was partially or entirely interrupted.

White signed a document that stated she understood the meal break policy and, therefore, understood that if she worked during her meal break, she had to record that time in an exception log in order to be compensated for her time.

White recorded the occasions where her meal break was partially or entirely interrupted in the exception log. She stated that when she reported missing a meal break, which her entire nurse unit missed as well, she was compensated for her time. She also states that there were occasions where she individually missed meal breaks but was not compensated. But on at least one occasion when she reported missing a meal break individually, she was compensated for her time. From time to time she told her supervisors that she was not getting a meal break and she also told Baptist's human resources department. However, she never told her supervisors or the human resources department that she was not compensated for missing her meal breaks.

Eventually, White stopped reporting her missed meal breaks in the exception log despite Baptist's instructions for employees to record their time in the log. She does not remember or have records of when her meal breaks were interrupted, either entirely or partially, and Baptist failed to compensate her.

In addition to the exception log, White knew Baptist's procedure to report and correct payroll errors. If there was an error, she could report the mistake to a nurse manager who would resolve the issue. White stated that when she used this procedure the errors were "handled immediately." However, she did not utilize this procedure to correct the interrupted meal break errors that she failed to report because she felt it would be "an uphill battle."

B.

White filed suit and moved for conditional class certification against Baptist in 2008, alleging violations of the FLSA for failing to compensate her for working during her lunch breaks. The district court granted in part and denied in part White's motion for conditional class certification. After Baptist moved for summary judgment and class decertification, the district court granted Baptist's motions.

II.

We review summary judgment rulings *de novo*. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2012). Summary judgment should be granted to the moving party if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. *Id*. We must draw all reasonable inferences in the nonmoving party's favor. *Id*.

Under the FLSA, we review class action certification rulings for an abuse of discretion. *O'Brien v. Ed Donnelly Enterprises, Inc*., 575 F.3d 567, 584 (6th Cir. 2009).

III.

A.

"[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (citations and internal quotation marks omitted). "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.

An automatic meal deduction system is lawful under the FLSA. *See generally Hill v. United States*, 751 F.2d 810 (6th Cir. 1984) (The U.S. Postal Service's automatic 30 minute lunch deduction system was upheld against a FLSA suit brought by a postman plaintiff where he claimed that he was continuously on duty during his mealtime and should be compensated for his mealtime.). "Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the [FLSA]." *F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 496-97 (6th Cir. 1952) (citation and internal quotation marks omitted). "As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Hill*, 751 F.2d at 814. A *de minimis* rule applies when "the matter in

issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Id*. at 815. Compensation is necessary "only when an employee is required to give up a substantial measure of his time." *Id*.

If an "employer knows or has reason to believe that [a worker] is continuing to work [then] the time is working time." 29 C.F.R. § 785.11. Therefore, the issue is whether Baptist knew or had reason to know it was not compensating White for working during her meal breaks.

1.

There is a dearth of case law on compensation for missed meal breaks under the FLSA as compared to the case law on unpaid overtime. But "[a] claim for non-payment of work during an established mealtime is analytically similar to an unpaid overtime claim." *Hertz v. Woodbury County*, 566 F.3d 775, 783 (8th Cir. 2009) (citation omitted). Since "[t]he gravamen of [White's] complaint is that [she] performed 'work' during mealtimes, [she is essentially arguing] that the work amounted to overtime because it was in addition to their already-scheduled, eight-hour shift, and the work during these mealtimes went uncompensated." *Id*.

In *Hertz*, police officers sued under the FLSA for unpaid overtime compensation and for work performed during mealtimes. 566 F.3d at 777-78. The County tracked the duty-status of an officer through a program called the Computer Aided Dispatch (CAD), which recorded when an officer radioed that he was on active duty and when he radioed that he had completed his shift. *Id*. at 779. Officers were required to submit paperwork to their supervisors to be paid overtime and "requests were 'rarely denied.'" *Id*. The police officers argued that the County had constructive knowledge of the amount of overtime worked because of its access to the CAD records and, therefore, "the County knew or should have known that they were working overtime." *Id*. at 781.

The Eighth Circuit held, "Access to records indicating that employees were working overtime, however, is not necessarily sufficient to establish constructive knowledge." *Id*. at 781-82 (citing *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th

Cir. 1995)).  The court ruled, "The FLSA's standard for constructive knowledge in the overtime context is whether the County 'should have known,' not whether it could have known."  *Id.* at 782 (citation omitted).  It went on to say, "It would not be reasonable to require that the County weed through non-payroll CAD records to determine whether or not its employees were working beyond their scheduled hours. This is particularly true given the fact that the County has an established procedure for overtime claims that Plaintiffs regularly used."  *Id.* (citing *Newton*, 47 F.3d at 749).

Turning to the issue of unpaid work during meal times, the court held the officers were "in the best position[]" to prove that they were working during their mealtimes and "[t]o require . . . the County [to] prove a negative – that an employee was not performing 'work' during a time reserved for meals – would perversely incentivize employers to keep closer tabs on employees . . . ."  *Id.* at 784.  The court concluded that "under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work."  *Id.*

In *Newton*, a city police officer was assigned to a U.S. Drug Enforcement Agency (DEA) Task Force, which had the authority to control his daily duties, but he remained employed by the City, which still had the responsibility for paying his salary and benefits as well as overtime.  47 F.3d at 747.  The City told the officer that it could pay him 12.5 hours of overtime per pay period but no more than that because the City could not afford it.  Id. at 747-48.  The officer "submitted time reports to the City and was paid for all of the hours claimed on [the] time reports."  *Id.* at 748.

The officer filed a FLSA suit because he claimed that the City did not compensate him for all of the overtime hours he worked as a member of the Task Force.  *Id.* at 747.  He admitted "that he never made a demand for payment for unauthorized overtime hours until he resigned."  *Id.* at 748.  He did, however, submit forms to the DEA that stated the overtime hours he was claiming in his lawsuit.  *Id.*  The officer understood that the DEA forms were not for payroll purposes and did not provide the forms to the City until he resigned.  *Id.*  But he claimed that the City knew he was working more overtime hours than he reported to them because he reported his activities

to his City supervisors on a daily basis. *Id.* Even though he admitted that in these daily oral reports he did not specify the number of hours he was working, the officer argued that, based on these reports, his City supervisors "must have known that he was working overtime." *Id.*

One of the officer's City supervisors had access to information regarding the activities of the Task Force as well as the activities of its individual members. The trial court found that based on this access to the Task Force's activities, the City had constructive knowledge that the officer was working overtime. *Id.* at 749. But the Fifth Circuit reversed, holding that "as a matter of law such 'access' to information does not constitute constructive knowledge that [the officer] was working overtime." *Id.*

The court ruled that the city had "specific procedures" for the officer to follow in order to be paid overtime and the officer ignored these procedures. *Id.* The court reasoned:

> If we were to hold that the City had constructive knowledge that [the officer] was working overtime because [his City supervisor] had the ability to investigate whether or not [the officer] was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.

*Id.* The issue was not if the officer's City supervisor "could have known that [the officer] was working overtime hours," but "whether he should have known." *Id.*

> In light of the fact that [his City supervisor] explicitly ordered [the officer] not to work overtime and in light of the fact that [the officer] admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that [the officer] was working overtime.

*Id.* Therefore, the evidence did not "support [the officer's] contention that the City should have known that the hours reported on his City time sheets were incorrect." *Id.* at 750.

The Ninth Circuit, in *Forrester v. Roth's I.G.A. Foodliner, Inc*., 646 F.2d 413, 414 (9th Cir. 1981), held that "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." Elaborating on this principle, the court stated, "[t]he relevant knowledge is not 'I know that the employee was working,' but 'I know the employee was working and not reporting his time.'" *Raczkowski v. TC Const. Co., Inc*., 8 F.3d 29 (table), 1993 WL 385483, at *1 (9th Cir. 1993) (citing *Forrester*).

The plaintiff in *Forrester* knew he had to report overtime on his time sheet and that his employer regularly paid reported overtime. 646 F.2d at 414. He was paid for the overtime he reported and he admitted that had he reported the additional overtime hours that were the subject of his lawsuit that he would have been paid for those hours too. *Id*. The court ruled:

> An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA].

*Id*. at 414-15.

Finally, we have held, in an unpublished opinion, that:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381(6th Cir. 2006).

2.

Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process. *See Hertz*, 566 F.3d at 781-82; *Newton*, 47 F.3d at 749-50; *Forrester*, 646 F.2d at 414-15. When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA. *See Hertz*, 566 F.3d at 781-82; *Newton*, 47 F.3d at 749-50; *Forrester*, 646 F.2d at 414-15. *See also Raczkowski*, 8 F.3d 29 (table), 1993 WL 385483, at \*1; *Wood*, 192 F. App'x at 381.

Each time White followed Baptist's procedures for being compensated for interrupted meal breaks or for payroll errors she was compensated. But now White states she decided not to follow Baptist's procedures for being compensated for interrupted meal breaks and argues that Baptist violated the FLSA for not compensating her for interrupted meal breaks. White occasionally told her supervisors that she was not getting her meal breaks. But she never told her supervisors that she was not being compensated for missing her meal breaks. Accordingly, there is no way Baptist should have known she was not being compensated for missing her meal breaks. Therefore, her claims fail.

White cites a number of cases to advance her position that Baptist should have known she was working during her meal breaks despite its reporting system. However, these cases involved situations where the employer prevented the employees from reporting overtime or were otherwise notified of the employees' unreported work. *See, e.g., Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 356-57 (2d Cir. 2011) (employer did not allow the employee to report overtime); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283-84, 287-91 (2d Cir. 2008) (employer had "full knowledge" that its employees were working overtime and failed to compensate them); *Allen v. Bd. of Pub. Educ.*, 495 F. 3d 1306, 1316 (11th Cir. 2007) (employer prevented the employee from reporting

overtime hours); *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1131 (10th Cir. 2000) (dispute revolved around whether all scheduled "on-call" time for technicians could constitute overtime or only time when they were called into work); *Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076, 1083-84 (11th Cir. 1994) (employer had constructive knowledge when supervisors were "specifically instructed" to "closely monitor" hours to ensure compliance with the no overtime policy and when the employer knew that the monitoring was not being done based on a previous study); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (with the employer's knowledge, the employee was never relieved for a meal break and always had to eat her meal while she worked); *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973) (employer discouraged employees from reporting overtime); *Burry v. National Trailer Convoy, Inc.*, 338 F.2d 422, 425-27 (6th Cir. 1964) (employer knew the employee's time sheets were inaccurate).

Here, there is no evidence that Baptist discouraged employees from reporting time worked during meal breaks or that they were otherwise notified that their employees were failing to report time worked during meal breaks. White alleges that Baptist only allowed her to use the exception log when she missed her entire meal break. However, the district court correctly disregarded this assertion because it came from a post-deposition declaration that contradicted her earlier deposition testimony, which indicated that she had entered partially missed meal breaks in the exception log. Under *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 806 (1999), "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citations omitted). White did not offer an explanation for the contradiction. Accordingly, the district court rightly ignored White's new position in her post-deposition declaration.

Baptist established a system to compensate its workers for time worked during meal breaks.  When White utilized the system she was compensated and when she failed to use the system she was not compensated.  Without evidence that Baptist prevented White from utilizing the system to report either entirely or partially missed meal breaks, White cannot recover damages from Baptist under the FLSA.

B.

Section 216(b) of the FLSA allows similarly situated employees to recover compensation from their employer in "opt-in" class action litigation.  29 U.S.C. § 216(b).  *See also Comer v. Wal-Mart Stores, Inc.* 454 F.3d 544, 546 (6th Cir. 2006). District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded.  *Comer*, 454 F.3d at 546. District courts use a "fairly lenient standard" that "typically results in conditional certification of a representative class" when determining whether plaintiffs are similarly situated during the first stage of the class certification process.  *Id*. at 547 (citation and internal quotation marks omitted).  Here, the district court applied the fairly lenient standard at the first stage and conditionally certified a class of Baptist employees.

At the second stage of the class certification process, district courts apply a "stricter standard" and more closely examine "the question of whether particular members of the class are, in fact, similarly situated."  *Id.*  Lead plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien*, 575 F.3d at 584 (citation omitted).

White bears the burden of showing that she and the opt-in plaintiffs are similarly situated.  However, the district court properly dismissed her FLSA claim.  Therefore, "[w]ithout a viable claim, [White] cannot represent others whom she alleged were similarly situated."  *In re Family Dollar FLSA Litigation*, 637 F.3d 508, 519 (4th Cir. 2011).  Just as opt-in plaintiffs are not similarly situated to a lead plaintiff if their claims are dismissed, *O'Brien*, 575 F.3d at 586, a lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim.  *In re Family Dollar FLSA Litigation*,

637 F.3d at 519. Since White cannot meet her burden that she is similarly situated to the opt-in plaintiffs because her FLSA claims were dismissed, decertification was proper.

AFFIRMED.

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting. At the heart of this case is the following simple fact: During her time as a nurse in the Baptist Hospital Emergency Room, White would occasionally work through lunch, either partially or entirely, and not receive compensation for that time. The defendants (collectively, "Baptist") do not appear to dispute this claim factually, but blame White for failing to report the missed lunch on an exception log used by her department. The district court granted summary judgment in favor of Baptist because White had presented no evidence that Baptist knew or should have known that she was working through lunch without compensation in violation of the Fair Labor Standards Act ("FLSA"). This is contrary to the record, which contains evidence from which a jury could find that Baptist had actual knowledge that White was working without compensation, namely, her deposition testimony that she had recorded missed lunches on the exception log and was not compensated for that time. Despite this evidentiary record, which we must view in White's favor on summary judgment, the majority affirms. I cannot agree, and I therefore respectfully dissent.

The law is clear that an employer with actual or constructive knowledge that an employee is working without compensation violates the Fair Labor Standards Act irrespective of whether the employee has properly reported that time. Summary judgment in these cases is exceedingly rare, because an employer's knowledge of unpaid work often turns on disputed issues of fact.[1] The district court and now the majority err by relying primarily on cases analyzing evidence of *constructive* knowledge, which frequently do consider a plaintiff's own failure to report hours, without first considering

_____

[1]Baptist itself seems to be aware that the district court's decision is against the great weight of the case law, devoting only the last six pages of its seventy-page brief to the propriety of summary judgment (and spending two of them on a strained waiver argument). Baptist at one point even calls the district court's conclusion that Baptist lacked knowledge of White's work a "fact-specific finding," Appellee Br. at 29, which is inherently inappropriate on summary judgment.

the evidence in support of *actual* knowledge. Because the plaintiff here has set forth evidence of actual knowledge of her work, summary judgment on this basis was inappropriate.

The parties generally agree on the relevant legal standard. To establish a prima facie claim under the FLSA for unpaid time, the plaintiff must show "by a preponderance of evidence that he or she performed work for which he or she was not properly compensated." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (internal quotation marks and alterations omitted). "Work not requested but suffered or permitted is work time" if "[t]he employer knows or has reason to believe that [the employee] is continuing to work." 29 C.F.R. § 785.11. The responsibility for maintaining accurate records regarding when an employee is working at all times falls on the employer. 29 U.S.C. § 211(c) (requiring that employers "shall make, keep, and preserve" records of every employee's hours); *see also* 29 C.F.R. § 516.2(a). As Judge Friendly once put it long ago:

> The obligation [to pay overtime under the FLSA] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping and of appropriate payment[] to the employee. The employer at its peril had to keep track of the amount of overtime worked by those of its employees . . . .

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (internal quotation marks, alterations, and citations omitted).

An employer is not required to use time-sheets to assure accurate reporting of hours and may institute a policy of automatically deducting a lunch period from an employee's compensation. *See Hill v. United States*, 751 F.2d 810, 811 (6th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985). However, the implementation of such a policy does not shift the burden onto the employee to ensure accurate reporting of hours or alleviate the employer's obligations to pay for time actually worked under the FLSA:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere

> promulgation of a rule against such work is not enough.  Management
> has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13; *see also* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, FLSA2007-1NA, at *1 (May 14, 2007) (implementation of automatic pay deduction for lunch breaks "does not violate the FLSA *so long as the employer* accurately records actual hours worked, including any work performed during the lunch period" (emphasis added)); Wage & Hour Div., U.S. Dep't of Labor, Fact Sheet #53, at *3 (July 2009) ("When choosing to automatically deduct 30-minutes per shift, the employer must ensure that the employees are receiving the full meal break.").

The mere existence of a policy requiring an employee to inform management of a missed break does not relieve an employer from its obligation to provide compensation for that time.  *See* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, FLSA2008-7NA, at *1-2 (May 15, 2008) (an employer "must compensate the employee for all hours worked including the time worked during the missed meal period," even if the "employee fails to take a meal break and does not notify the manager" in direct violation of company policy).  *See also Reich v. Dep't of Conservation and Natural Res., Ala.*, 28 F.3d 1076, 1083 (11th Cir. 1994) ("There is no indication in the record that the Department did anything . . . to discourage the overtime required by the vast majority of its officers to properly perform their duties other than to promulgate its policy against such work.").  When an employer automatically deducts pay for lunch, particularly in an environment like an understaffed emergency room where the record suggests that it may be difficult to take an uninterrupted lunch break let alone a break at all, the employer should do more than simply point to a policy against such practices to escape responsibility.  The employer must pay its employees for any missed or interrupted lunch break the employer knows or should have known the employee was not taking, even if the employee failed to report the missed break.

The cases consistently confirm this principle:  An employer must pay its employees for any time the employer knows or should have known the employee is working, even if the employee fails to report the work.  *See Kuebel v. Black & Decker*

*Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) (Sotomayor, J., joining) ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance. This duty arises even . . . where the employee fails to report his overtime hours." (citations omitted)); *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1133 (10th Cir. 2000) ("To claim, then, that [the employer] did not know [the employees] were working because they did not report every hour of their evenings and weekends as overtime is misleading."); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."), *cert. denied*, 525 U.S. 1055 (1998).

Whether an employer has actual or constructive knowledge of unpaid work is a question of fact. *Holzapfel*, 145 F.3d at 521. As such, it is ill-suited for resolution on summary judgment when the evidence is genuinely in dispute. *See Curry v. Scott*, 249 F.3d 493, 508 (6th Cir. 2001) (holding district court erred in determining defendants had no actual knowledge on summary judgment because inquiry "should have been left to the trier of fact"). For this reason, summary judgment is routinely reversed for the precise reasons used by the district court and the majority in this case. *Kuebel*, 643 F.3d at 365 (reversing summary judgment); *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 596-97 (7th Cir. 2008) (same); *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1321 (11th Cir. 2007) (same); *Pabst*, 228 F.3d at 1133 (same).

The majority distinguishes these cases by arguing that summary judgment is affirmed in other circuits when a plaintiff fails to report her hours under an established system for doing so. But the majority misses the mark; these cases all involve only an attempt to prove constructive knowledge, not actual knowledge, and when so viewed they actually support the general principle of *denying* summary judgment when there is

evidence in the employee's favor. *See Hertz v. Woodbury Cnty.*, 566 F.3d 775, 782 (8th Cir. 2009) (upholding jury verdict of no actual knowledge of overtime work and no constructive knowledge because no evidence that hours of field officers were being under-reported or that officers were discouraged from using the overtime system); *Newton v. City of Henderson*, 47 F.3d 746, 748-49 (5th Cir. 1995) (reversing bench trial because no actual knowledge that undercover officer with irregular, off-site hours was working overtime, and the City's mere access to information that *could* show such information was insufficient without more); *Davis v. Food Lion*, 792 F.2d 1274, 1277-78 (4th Cir. 1986) (holding no clear error in bench-trial finding of no actual or constructive knowledge when overtime-prohibition policy was regularly enforced through reprimands and discipline, overtime work was unnecessary for job performance, and the employee then deliberately concealed his overtime work despite being warned to stop).

It is important to be clear about the relevance of an employee's failure to report time worked in these cases. An employee may not voluntarily decline compensation for time worked. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) ("[T]he purposes of the [FLSA] require that it be applied even to those who would decline its protections."). No court has held that failing to report hours can defeat a claim under the FLSA where the employer had *actual* knowledge of the work performed. Holding otherwise would be akin to holding that an employee may waive FLSA protections by not reporting time her employer knows about, which would defeat the very purposes of the FLSA and be contrary to direct Supreme Court precedent. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (noting FLSA rights cannot be waived); *see also Allen*, 495 F.3d at 1321 ("[E]ven if these Plaintiffs did not inform their supervisors that they were not recording their hours, a jury could still charge the Board with constructive knowledge.").

An employee's failure to report extra hours can be relevant to rebutting a claim of *constructive* knowledge in cases where an employer's ability to unearth the employee's extra work would otherwise be difficult through reasonable diligence. For example, when an employee works offsite or stays late without telling his employer, and

there is a complete lack of evidence that would suggest to his employer that he was doing this work (i.e., he reported overtime in the past, his normal duties do not require overtime, other coworkers do not work overtime, no one ever saw him working late, etc.), the employee's suggestion that his employer should have known he was working falls flat. In such situations, asking the employee to tell the employer he is working makes sense. But the employee's failure to report remains just one piece of circumstantial evidence suggesting a lack of constructive knowledge; an employer who sees his employees working late or who pressures employees not to report hours may not be as credible in relying on the employee's reporting failures. *See Reich*, 28 F.3d at 1083-84 (holding employer had constructive knowledge of overtime despite policy and irregular off-site hours because employer could have acquired actual knowledge of work through the exercise of reasonable diligence); *see also Allen*, 495 F.3d at 1321; *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973).

In the rare case that affirms summary judgment for the employer (only two published opinions have done so to my knowledge), the evidence of actual knowledge is completely absent and the evidence suggesting constructive knowledge is a mere scintilla at best. In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981), the Ninth Circuit affirmed summary judgment for the employer because the employee had failed to report overtime hours and there was no evidence the employer should have known of the work. *Forrester* does broadly suggest that "where the acts of an employee prevent an employer from acquiring knowledge, . . . the employer cannot be said to have [committed a violation of the FLSA]." *Id.* at 414-15. But this language must be read in context, however, because *Forrester* also reaffirms that "[a]n employer who is armed with [knowledge of his employee's work] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.* at 414.

The other published opinion has already been mentioned—in *Allen*, the Eleventh Circuit affirmed summary judgment for some plaintiffs despite reversing for others. *Allen*, 495 F.3d at 1323. Summary judgment was affirmed against three plaintiffs who

had presented no evidence that their employer had actual knowledge of their overtime and insufficient evidence of constructive knowledge: one plaintiff stayed late without being asked and without telling anyone, another performed work at home without telling anyone, and the third had simply alleged that "there must have been time" that went unreported despite testifying that she never worked off the clock. *Id.* at 1323.

However, although summary judgment was affirmed against those three plaintiffs, the Eleventh Circuit in *Allen* simultaneously reversed summary judgment against other plaintiffs who also never informed their supervisors that they were working overtime. One of these plaintiffs, Eleanor Welch, was never discouraged from reporting her hours correctly, but the court noted that she presented evidence that her supervisor "knew that she would be with the children all day without a break." *Id.* at 1322. As a result, the employer's constructive knowledge was an issue of fact for trial and summary judgment was inappropriate.

There are no published cases in our circuit addressing this issue. In an unpublished opinion, we affirmed summary judgment for the employer for reasons consistent with denying summary judgment here today. *See Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006) (unpublished opinion). In *Wood*, the employee regularly worked unsupervised as a maintenance technician at an apartment complex. *Id.* at 378. He later sued for overtime of around five hours every day, but he put forth no evidence that his employer had actual or constructive knowledge that he was performing the extra after-hours work. Summary judgment was appropriate not solely because the plaintiff had failed to report his extra hours, but because he presented no evidence of actual knowledge and even less evidence to establish constructive knowledge of those hours. The work did not need to be done after-hours, and when Wood did suggest to a manager that he was working overtime, he was encouraged to report all his time and was never discouraged from doing so. *Id.* at 380-81. *Wood* reaffirms the general principle that an employer must have actual or constructive knowledge of the uncompensated work, and constructive knowledge cannot be based on

conjecture alone.  *Id.* at 381 ("An employer cannot satisfy an obligation that it has *no reason* to think exists." (emphasis added)).

Here, perhaps due to White's own less-than-clear explanation of the evidence establishing actual or constructive knowledge below, the district court appears to suggest that an employee's failure to report can generally relieve an employer of its obligation to ensure accurate time reporting, regardless of other evidence suggesting actual or constructive knowledge.  The district court concluded that courts deny recovery "in FLSA cases where an employee is aware of her employer's system for reporting work that falls outside the employee's normal, forty-hour shift but fails to report that work." R. 258 (D. Ct. Order at 8) (Page ID #6499).  The majority, without explanation or support in the FLSA, adopts this broad exception to the traditional requirements of the FLSA.  The underlying principle is more nuanced than the broad brush the majority applies to sweep away an otherwise valid claim for relief.  At no point does *Wood* or any of these cases suggest that an employer *with actual knowledge* of overtime can defeat its obligations by pointing to incomplete time-sheets.  There are no cases, on summary judgment or otherwise, where an employee's failure to report hours *actually known to be worked* by the employer defeats a claim under the FLSA.

That leaves only the question of whether there is evidence of actual or constructive knowledge on the record in this case.  As an initial matter, there are several facts that are undisputed.  Baptist had a policy of automatically deducting pay for thirty minutes from every shift over six hours.  Baptist employees were instructed to take a thirty-minute lunch break every day, and White acknowledged receipt of this information upon starting at Baptist. R. 90-8 (White Dep. at 82-83) (Page ID #2665-66). Baptist employees were instructed to report any instance when they were unable to take a full, uninterrupted lunch break, and they were told they would be compensated or permitted to take the break later.  White testified that she knew how to report any partial or missed lunch break—on an exception log in her department—and on several

occasions she used the log to report a missed lunch and successfully received her pay.[2] *Id.* at 84-85 (Page ID #2667-68).

But there was also evidence suggesting that White was not compensated at all for some missed lunch breaks, and that her employer had actual knowledge of the missed break and failed to pay her for it.[3] White testified that on previous occasions, she had indicated a missed or interrupted break in the exception log and was not paid for it. *Id.* at 86-87 (Page ID #2670). If believed by a jury, this evidence would constitute actual knowledge of uncompensated work. Summary judgment was therefore improperly granted on the basis of this disputed fact alone.[4]

Furthermore, the evidence of constructive knowledge here is also strong. White testified at her deposition that she had once received a break of only fifteen or twenty minutes and one of her supervisors, Sharon Fiveash, told her that counted as her lunch break because "you got a bite." *Id.* at 89-90 (Page ID #2673). She testified that she complained about the missed lunch breaks directly to her supervisor, Chad Jones, and to the ER director, and she even complained about it on her employee surveys. *Id.* at 107 (Page ID #2680). White admitted that her complaints were about the lack of a break and not lack of pay, *id.* at 108 (Page ID #2681), but her supervisors knew she that was working through lunch, knew that lunches were automatically uncompensated, and never

---

[2]The parties spend a great deal of time debating White's knowledge of how to record her time properly and very little time on Baptist's knowledge that she was failing to report properly. I agree with the district court, however, that White's deposition trumps her after-filed declaration and establishes that she knew she could report any missed *or* interrupted break on the exception log. R. 258 (3/23/11 D. Ct. Order 13-16) (Page ID #6504-07).

[3]These facts distinguish this case from our recent unpublished opinion in *Frye v. Baptist Memorial Hospital, Inc.*, No. 11-5648, 2012 WL 3570657 (6th Cir. Aug. 21, 2012), where a different plaintiff was also attempting to bring a class action against Baptist for its system of automatically deducting pay for lunch breaks. Although we made no ruling on the merits of the individual plaintiffs' FLSA claims in that suit, *id.* at *4, resolving the appeal on other grounds, we also observed that the lead plaintiff "abandoned his only evidence" on the issue of whether Baptist had knowledge of the deficiencies in its reporting system, *id.* at *6.

[4]As the holder of the payroll records, Baptist could have easily responded to White's statement with a list of all times White completed the exception log and her payroll records demonstrating the inaccuracy of her testimony. Instead, Baptist provided one exception log and evidence that White was compensated that one time. Without the documentary evidence, Baptist is essentially asking this court to make a credibility decision to disbelieve White's statements, which is inappropriate on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

responded to White's complaints by asking her to make sure she signed the exception log for the missed break.[5]  A reasonable juror could interpret these actions as pressure from White's immediate supervisors not to report her missed lunches, which at a minimum would constitute constructive knowledge of the unpaid time.  *See Brennan*, 482 F.2d at 827-28.

Baptist's decision to use an automatic-deduction and self-reporting system for missed breaks is permissible, but the consequences of an employee's failure to report a missed break still fall on the employer, not the employee.  Unlike many of the above-cited cases, White performed all her work in a hospital on an emergency-room floor surrounded by Baptist employees and was under active supervision by either a charge nurse or some other supervisor at all times.  White has met her burden of presenting evidence from which a jury could find that her employer knew or should have known that she was missing lunches and not receiving pay (or potential overtime).  Whether the discouragement White received from her supervisors was truly not about seeking pay for that missed break is not resolvable on summary judgment.  For all of these reasons, I respectfully dissent.

---

[5] By way of example, in other Baptist departments the employees were presented with a copy of the exception logs for each pay period and asked to review their entries and sign to attest to the record's accuracy.  R. 233-1 (Defs.' Mot. to Decertify at 7) (Page ID #5046).  Other Baptist employees who told their supervisors they missed lunches were immediately instructed to record the missed lunch on the exception log. *See id.* at 22, 25, 33 (Page ID #5061, 5064, 5072). *See e.g.*, *Wood*, 192 F. App'x at 381 (employee instructed to report extra hours when reported to management).  Baptist could have presented such evidence of similar behavior in White's department to support its motion for summary judgment, but did not.